Maurer v. Maurer, 2013 NCBC 44.

STATE OF NORTH CAROLINA

COUNTY OF WAKE

IN THE GENERAL COURT OF JUSTICE
SUPERIOR COURT DIVISION
13 CVS 4421

JILL L. MAURER, Individually and
Derivatively on Behalf of SLICKEDIT
INC.,

        Plaintiff,

    v.

JOSEPH CLARK MAURER and
SLICKEDIT INC.,

        Defendants.

)
)
)
)
)
)
)
)
)
)
)
)
)
)

**ORDER AND OPINION**

{1}    THIS MATTER is before the court on Defendant Joseph Clark Maurer's Motion to Dismiss Plaintiff's Amended Complaint ("Motion"), brought pursuant to Rules 9(b) and 12(b)(6) of the North Carolina Rules of Civil Procedure ("Rule(s)"). For the reasons stated below, the Motion is GRANTED in part and DENIED in part.

> *Parker Poe Adams & Bernstein, LLP by Catharine B. Arrowood and Scott E. Bayzle for Plaintiff.*

> *Brooks, Pierce, McLendon, Humphrey & Leonard, L.L.P. by Walter L. Tippett, Jr., Jennifer K. Van Zant, and Eric M. David for Defendant Joseph Clark Maurer.*

Gale, Judge.

## I. PARTIES

{2}    Plaintiff Jill L. Maurer ("Ms. Maurer") and Joseph Clark Maurer ("Mr. Maurer") are former spouses.  They were parties in earlier litigation before this court involving SlickEdit, Inc., ("SlickEdit"), which was then a Virginia corporation and which also involved other parties who were at that time SlickEdit shareholders.  *See Maurer v. SlickEdit, Inc.*, 2006 NCBC LEXIS 1 (N.C. Super. Ct. Feb. 3, 2006).  SlickEdit has since been reorganized as a North Carolina corporation and Ms. Maurer and Mr. Maurer are now each fifty percent shareholders.  In this action, Ms. Maurer contends that Mr. Maurer has secured corporate control by reason of his status as sole director and executive officer, and has abused that corporate control to exclude her from any knowledge of or participation in corporate affairs despite her equal ownership.

{3}    Ms. Maurer, a citizen and resident of Wake County, North Carolina, is a fifty percent shareholder of SlickEdit.  (Am. Compl. ¶¶ 1, 14.)

{4}    Mr. Maurer, a citizen and resident of Wake County, North Carolina, is an officer, director, and fifty percent shareholder of SlickEdit. (Am. Compl. ¶¶ 3, 14.)

{5}    SlickEdit is a software corporation incorporated under the laws of the State of North Carolina with its principal place of business in Morrisville, North Carolina.  (Am. Compl. ¶¶ 2, 7.)

## II. PROCEDURAL BACKGROUND

{6}    The original Complaint was filed on March 28, 2013.  The case was designated a Business Court case by Order of Chief Justice Sarah Parker dated April 1, 2013 and assigned to the undersigned on April 3, 2013.  Mr. Maurer filed an initial motion to dismiss on May 29, 2013.  The Amended Complaint was filed on June 10, 2013.  The Amended Complaint includes

claims for: (1) judicial dissolution and accounting of SlickEdit in accordance with N.C. Gen. Stat. § 55-14-30(2)(ii-iv) (2012); (2) recovery by Ms. Maurer for Mr. Maurer's breach of fiduciary duty owed to her individually; (3) recovery by SlickEdit for Mr. Maurer's breach of fiduciary duty owed to SlickEdit; (4) recovery for constructive fraud arising from these breaches of fiduciary duty; and (5) the removal of Mr. Maurer as the sole director of SlickEdit if dissolution is not ordered. The present Motion was filed on June 14, 2013 and is limited to claims brought against Mr. Maurer individually.

{7} As to Ms. Maurer's individual claim, Mr. Maurer contends that he owes her no individual fiduciary duty as a fellow fifty percent shareholder. As to the derivative claim, Mr. Maurer acknowledges his fiduciary duty but contends that any claim for breach of that duty is barred either by the business judgment rule or by the statute of limitations.

{8} The Motion has been fully briefed, a hearing was held on July 23, 2013, and the matter is ripe for disposition.

### III. FACTS

{9} The court does not make findings of fact in connection with a motion to dismiss, as a motion to dismiss "does not present the merits, but only [determines] whether the merits may be reached." *Concrete Serv. Corp. v. Investors Grp., Inc.*, 79 N.C. App. 678, 681, 340 S.E.2d 755, 758 (1986). The following facts are stated to provide context for the court's opinion and are assumed to be true for purposes of the Motion. The court draws permissible inferences in Ms. Maurer's favor, but the court is not bound by her legal conclusions. *Oberlin Capital, L.P. v. Slavin*, 147 N.C. App. 52, 60–61, 554 S.E.2d 840, 847 (2001).

A.  SlickEdit reorganized as a North Carolina  corporation

{10}    While married in 1988, Ms. Maurer and Mr. Maurer incorporated MicroEdge Inc. in Virginia, which later became SlickEdit.  (Am. Compl. ¶ 7.)  Ms. Maurer was the Chief Executive Officer of the Virginia corporation and remained so until her termination in 2004.  (Am. Compl. ¶ 8.) She also served on its Board of Directors.  (Am. Compl. ¶ 8.)

{11}    SlickEdit was converted to a North Carolina Subchapter S corporation on May 15, 2008 after Ms. Maurer and Mr. Maurer were divorced.  (Am. Compl. ¶¶ 9, 18.)  Since its conversion, both Ms. Maurer and Mr. Maurer been the only two shareholders, each owning fifty percent of issued and outstanding shares.  (Am. Compl. ¶ 14.)  The North Carolina incorporation documents designated Mr. Maurer as the initial sole director, which Ms. Maurer contends was in anticipation of a subsequent election of directors at a shareholders' meeting.  (Am. Compl. ¶ 15.)

{12}    SlickEdit adopted initial bylaws on June 1, 2008.  Article II, § 2 provides that an "annual meeting of the shareholders shall be held" for the election of directors and the transaction of other proper business.  (Am. Compl. ¶¶ 10–11.)  Article II, § 4 provides that a shareholder "of not less than one-tenth of all votes entitled to be cast on any issue," may require a special shareholders' meeting to be called for the purpose of, among other things, electing directors.  (Am. Compl. ¶ 12.)  As initially adopted, Article III, § 2 provided that:

> The number of directors of the Corporation shall be not less than one (1) nor more than seven (7) as may be fixed or changed from time to time, within the minimum  and maximum, by the shareholders or by the Board.  Initially the number of directors shall be one (1) until changed by the shareholders or by the Board.

(Am. Compl. Ex. 1, Art. III, § 2.)

{13}    Later on April 3, 2009, Art. III, § 2 was amended to provide that "[t]he number of directors of the Corporation shall be one (1)," a decision in which Ms. Maurer did not participate. (Am. Compl. ¶ 39, Ex. 2.)

B. Mr. Maurer's alleged misuse of control

{14}    Since the North Carolina reorganization, Mr. Maurer has at all times been SlickEdit's Chief Executive Officer, President, Corporate Secretary, and sole director. (Am. Compl. ¶ 21.)

{15}    Ms. Maurer complains that Mr. Maurer has abused his control by operating the company in contravention of her expectations as a shareholder that, *inter alia*: (1) regular annual shareholders' meetings would be held; (2) there would be fair election of directors; (3) she would have access to details of SlickEdit's plans, operations, and financials and other corporate books and records; (4) she would be given the opportunity to serve as an officer and/or director; (5) she would participate in management; and (6) she would receive regular communications regarding corporate operations and business. (Am. Compl. ¶ 17.) Instead, Mr. Maurer has blocked her participation in or knowledge of corporate affairs and has refused any meaningful discussion or election of directors at shareholder meetings. (Am. Compl. ¶ 22). Ms. Maurer details allegations supporting her claim that Mr. Maurer has implemented an overall system designed to preclude her knowledge regarding the corporation. (Am. Compl. ¶¶ 28, 36–37.)

{16}    The Amended Complaint challenges one particular corporate decision to retain $1 million in cash reserves. Ms. Maurer alleges that this action was taken to impose financial hardship on her and cannot be justified by any corporate purpose at a time when SlickEdit suffers from declining revenues and has an increasingly outdated product (Am. Compl. ¶¶ 28, 31), particularly so when Mr. Maurer continues to pay himself a salary and bonuses without any performance goals or reviews. (Am. Compl. ¶¶ 29, 58.)

{17}    Read together, the various allegations of the Amended Complaint outline a consistent deadlock between the two equal shareholders as to any change in management, as a result of which Mr. Maurer has enjoyed sole effective control, which he has misused for personal leverage. (Am. Compl. ¶¶ 24, 46, 50–52, 55, 57, 59.)

## IV.  STANDARD OF REVIEW

{18}    The appropriate inquiry on a motion to dismiss pursuant to Rule 12(b)(6) is "whether, as a matter of law, the allegations of the complaint, treated as true, are sufficient to state a claim upon which relief may be granted under some legal theory, whether properly labeled or not." *Crouse v. Mineo*, 189 N.C. App. 232, 237, 658 S.E.2d 33, 36 (2008) (quoting *Harris v. NCNB Nat'l Bank of N.C.*, 85 N.C. App. 669, 670, 355 S.E.2d 838, 840 (1987)). A motion to dismiss may be granted if the complaint reveals the absence of facts required to make out a claim for relief or if the complaint reveals some fact that necessarily defeats the claim. *Wood v. Guilford Cnty.*, 355 N.C. 161, 166, 558 S.E.2d 490, 494 (2002).

## V.  ANALYSIS

{19}    The court first addresses whether the Amended Complaint adequately alleges a basis on which Ms. Maurer can proceed with an individual claim.  The court then addresses whether Mr. Maurer can, at this preliminary stage of the pleadings, defeat the derivative claim because the Amended Complaint fails to allege sufficient particular facts to overcome the business judgment rule, or because the facts alleged demonstrate that the derivative claim is, in any event, time-barred.  In order to assess the limitations defense, the court examines whether the Amended Complaint

includes allegations of personal benefit adequate to invoke the ten‑ year statute of limitations which control constructive fraud claims.

{20} The court concludes that Ms. Maurer's individual claim should be dismissed but that resolution of the defenses to the derivative claim against Mr. Maurer on the peculiar facts of this case are not properly resolved pursuant to the present Motion.

A. Ms. Maurer has not alleged a basis on which to pursue an individual claim

{21} As a general rule, shareholders lack standing to bring individual causes of action to enforce actions accruing to the corporation. *Barger v. McCoy Hillard & Parks*, 346 N.C. 650, 659, 488 S.E.2d 215, 220 (1997); *Norman v. Nash Johnson & Sons' Farms, Inc.*, 140 N.C. App. 390, 395–96, 537 S.E.2d 248, 253 (2000).

{22} *Barger* held:

a shareholder may maintain an individual action against a third party for an injury that directly affects the shareholder, even if the corporation also has a cause of action arising from the same wrong, if the shareholder can show that the wrongdoer owed him a *special duty* or that the *injury suffered by the shareholder is separate and distinct* from the injury sustained by the other shareholders or the corporation itself.

346 N.C. at 659, 488 S.E.2d at 220 (emphasis added).

{23} Ms. Maurer claims the benefit of the exceptions to this general rule. She claims that she was owed a special fiduciary duty by Mr. Maurer by reason of his control and she suffered an injury separate and distinct from that suffered by the corporation. The court concludes that the allegations do not entitle her to either of these exceptions to the *Barger* rule.

1.     The claimed fiduciary duty

{24}    North Carolina appellate courts have recognized that a fiduciary duty is owed by a controlling shareholder to a minority shareholder in particular circumstances, and have allowed an individual claim for breach of that duty to proceed even if a derivative action would otherwise be appropriate. *E.g., Norman v. Nash Johnson & Sons' Farms, Inc.*, 140 N.C. App. 390, 537 S.E.2d 248 (2000). This court addressed that line of cases, in the context of a claim involving owners of a limited liability company, and determined that the cases turn on their particular facts, such that the court does not believe that the appellate courts have defined a black letter rule allowing a minority shareholder to pursue an individual action against a controlling shareholder when a derivative claim would be adequate to protect the asserted rights of both the corporation and the minority owner. *Blythe v. Bell*, 2013 NCBC LEXIS 18, at *18 (N.C. Super. Ct. April 8, 2013). This court is now asked to extend the line of appellate cases to impose a fiduciary duty in favor of one fifty percent owner against the other fifty percent owner who has effective control.

{25}    The Court of Appeals has to date refused to impose such a fiduciary duty in favor of a fifty percent owner. *Allen v. Ferrera*, 141 N.C. App. 284, 540 S.E.2d 761 (2000) (recognizing that a special duty may be owed to minority shareholders, but, as a fifty percent owner, the plaintiff was not a minority shareholder); *Outen v. Mical*, 118 N.C. App. 263, 266–67, 454 S.E.2d 883, 885 (1995) (dismissing argument that a fifty percent shareholder relationship created a special relationship sufficient to create individual standing); *see also Freese v. Smith*, 110 N.C. App. 28, 37, 428 S.E.2d 841, 848 (1993). In *Allen*, the court adhered to the *Barger* rule notwithstanding that one of the two fifty percent owners controlled the company books and management. 141 N.C. App. at 286, 540 S.E.2d at 764.

{26}    As the court noted in *Blythe*, the cases affording an individual claim to the minority shareholder were based, at least in part, on the fact

that the minority shareholder otherwise faces potentially insurmountable hurdles because of the procedural requirements for derivative actions which can be manipulated by a controlling majority. A fifty percent owner, with the ability to impose an impasse, is not in the same precarious position. An equal owner, unlike a minority owner, can automatically create a deadlock on any matter requiring a shareholder vote, and the existence of such a deadlock may afford greater access to judicial dissolution and a limit on the control of the other shareholder. *See* N.C. Gen. Stat. § 55-14-30.

{27} The court acknowledges that Chief Judge Jolly of this court issued a decision which arguably may be read on its particular facts to acknowledge that a fifty percent shareholder may pursue an individual action for breach of fiduciary duty against the other owner. *LeCann v. Cobham*, 2011 NCBC LEXIS 28, at *30–31 (N.C. Super. Ct. Aug. 2, 2011). But his holding was a narrow one and must be read in the context of the particular facts of that case. The particularized holding in *LeCann* did not rest on abuse of control by one of two equal owners. Rather, in *LeCann,* each of the two owners claimed a fiduciary duty owed by the other, and Judge Jolly further noted the corporation had been run more like a partnership, where fiduciary duties are owed by one partner to another. On that basis, he allowed the claims to survive Rule 12(b)(6). *LeCann*, 2011 NCBC 28, at *32. The facts here are not comparable.

{28} As discussed in detail below, while the court finds that the peculiar facts of this case afford Ms. Maurer some latitude on the defenses asserted against her derivative claim, the court does not believe her allegations afford her the benefit of a special duty that avoids the *Barger* rule which precludes individual claims. To escape that rule, she must then adequately allege an injury separate and distinct from the corporation.

2.    The claimed separate and distinct injury

{29}    To avoid the *Barger* rule on this basis, Ms. Maurer must demonstrate that she suffered a "loss peculiar to [herself]." *Outen*, 118 N.C. App. at 266, 454 S.E.2d at 885.  She attempts to do so by complaining that the threat of a loss of share price occasioned by her being forced to sell her interest at a reduced price because of Mr. Maurer's improper leverage, and asserting that she is further exposed to potential financial injury by Mr. Maurer's threats to withhold shareholder tax distributions.  She does not allege that she has actually sold shares or that distributions have actually been withheld.  Any allegation regarding reduced share values because of injury to the corporation by a director's wrongs runs squarely into *Barger's* holding that claims for such loss belong to the corporation, not to the individual shareholder.  *Barger*, 346 N.C. at 659, 488 S.E.2d at 219–20 (1997) ("The only injury plaintiffs as shareholders allege is the diminution or destruction of the value of their shares . . . .  This is precisely the injury suffered by the corporation itself.").  Threats of potential injury not yet suffered, including threats to withhold tax distributions, are not adequate to demonstrate a separate and distinct injury.  The Amended Complaint does not allege that any such threats have actually been carried out.  Likewise, the Amended Complaint does not include any count intended to protect Ms. Maurer's individual right to inspect corporate books and records.

{30}    In sum, the court concludes that the Amended Complaint does not include allegations adequate to support an individual shareholder claim by Ms. Maurer either through imposing a special duty in her favor or by recognizing a claim for injury separate and distinct from the harm suffered by the corporation.  The case should continue against Mr. Maurer individually, if at all, only through the derivative action.  The court then now turns to the defenses asserted against that action.

B. <u>The business judgment rule</u>

{31}   Here, the business judgment rule is invoked in a somewhat unusual posture.  There is a natural interplay between applying the business judgment rule to bar a shareholder's claim and the shareholder's awareness of the corporate decision and the manner in which it was made, and in that regard, it is noteworthy that a shareholder has  statutory rights of access to corporate records. *See* N.C. Gen. Stat. § 55-16-01(e) (2012); N.C. Gen. Stat. § 55-16-02(a) (2012); *see also In re Quintiles Transnational Corp. S'holders Litig.*, 2003 NCBC LEXIS 3, at *26 (N.C. Super. Ct. Dec. 19, 2003). Implicitly, cases which demand that the shareholder plead specific facts to challenge corporate decision making expect that the shareholder has undertaken a full investigation before challenging the decision.  Yet here the gravamen of Ms. Maurer's complaint is that she has been shut-out from meaningful access.  Further, it is more typical that the presumptions inherent in the business judgment rule arise in the context of deliberative decision making by a board, in contrast here to the use of the rule by a sole director.

{32}   North Carolina clearly recognizes the business judgment rule.

> [It] operates primarily as a rule of evidence or judicial review and creates, first, an initial evidentiary presumption that in making a decision the directors acted with due care (i.e., on an informed basis) and in good faith in the honest belief that their action was in the best interest of the corporation, and second, absent rebuttal of the initial presumption, a powerful substantive presumption that a decision by a loyal and informed board will not be overturned by a court unless it cannot be attributed to any rational business purpose.

*Hammonds v. Lumbee River Elec.  Mbrshp. Corp.*, 178 N.C. App. 1, 20–21, 631 S.E.2d 1, 13 (2006).  The presumption "can be rebutted by a showing that the board violated one of its fiduciary duties in connection with the challenged transaction." *Wachovia Capital Partners, LLC v. Frank Harvey Inv. Family L.P.*, 2007 NCBC LEXIS 7, at *22 (N.C. Super. Ct. Mar. 5, 2007)

(*quoting Emerald Partners v. Berlin*, 787 A.2d 85, 91 (Del. 2001)).  To rebut this presumption, a plaintiff must present "more than bare allegations of breaches of fiduciary duties on the part of directors." *Id.* at *23.

{33}    Generally, an adequate pleading will include allegations that the director (1) failed to act in good faith; (2) made a decision that was unreasonable under the circumstances; or (3) was inattentive or uninformed. *See Green v. Condra*, 2009 NCBC LEXIS 20, at *96 (N.C. Super. Ct. Aug. 14, 2009).

{34}    As Judge Tennille, then Chief Judge of this court, noted, the business judgment rule is "process oriented" rather than a simple exercise of an after the fact "objective" evaluation.  *State v. Custard*, 2010 NCBC LEXIS 9, at *57–58 (N.C. Super. Ct. Mar. 19 2010) (quoting *In re Caremark Int'l Inc. Derivative Litig.*, 698 A.2d 959, 967–68 (Del. Ch. 1996)).  Here, on these pleadings, there is no adequate basis on which to assess the challenged decision-making.  The court admits a concern that allowing the Amended Complaint to go forward without more specific allegations will be improperly read as endorsing the filing of a derivative action without prior thorough investigation, including if necessary a shareholder's review of records available through statutory inspection rights.  But on the facts of this particular case, and applying the liberal rules demanded by Rule 12(b)(6), the court concludes that the Amended Complaint includes allegations adequate to withstand a present dismissal through early application of the business judgment rule.  This determination is without prejudice to revisiting the business judgment rule at a later stage.

C.  The statute of limitations

{35}    Mr. Maurer contends that the Amended Complaint reveals on its face facts adequate to bar the derivative claim by a three-year statute of limitations.   That challenge depends on a conclusion that the derivative

claims accrued when Mr. Maurer was made sole director in 2008. Ms. Maurer contends that even if that were an accurate conclusion, Mr. Maurer's continued misuse of the control given to him in 2008 requires an application of the continuing wrong doctrine and a tolling of the limitations period.[1] The court disagrees. However, the court agrees with Ms. Maurer that the Amended Complaint, broadly read with the liberality that Rule 12(b)(6) requires, asserts claims directed toward acts done and injury suffered after 2008 and within three years of the filing of suit. (Am. Compl. ¶¶ 24, 42–50, 55–59, 89.)

{36} The court also concludes that it is premature to determine whether the corporation will ultimately be able to avail the ten-year statute of limitations period of N.C. Gen. Stat. § 1-56 which governs claims for constructive fraud. *See NationsBank of N.C. v. Parker*, 140 N.C. App. 106, 113, 535 S.E.2d 597, 602 (2000). To do so, Ms. Maurer will ultimately be required to demonstrate that Mr. Maurer misused his fiduciary duty for personal benefit. *White v. Consol. Planning, Inc.*, 166 N.C. App. 283, 294, 603 S.E.2d 147, 156 (2004); *Sterner v. Penn*, 159 N.C. App. 626, 631, 583 S.E.2d 670, 674 (2003). Generally, the mere payment of salary or a fee for work actually performed does not demonstrate such a personal benefit. *White*, 166 N.C. App. at 295, 603 S.E.2d at 156.

{37} The court again is faced with the tension between Ms. Maurer's admittedly thin factual allegations and her claim that she has been foreclosed

---

[1] "The general rule is that a cause of action accrues as soon as the right to institute and maintain a suit arises, and the limitations period begins to run when the cause of action accrues." *Blythe v. Bell*, 2013 NCBC LEXIS 7, at *67 (N.C. Super Ct. Feb. 4, 2013). There is a three-year statute of limitations for breach of fiduciary duty claims. *See Tyson v. North Carolina Nat'l Bank*, 305 N.C. 136, 142, 286 S.E. 2d 561, 565 (1982). In some circumstances, the limitations period may be tolled by the application of the "continuing wrong" doctrine. *Id.* "A continuing violation is occasioned by continual unlawful acts, not by continual ill effects from an original violation." *Id.* In cases where the continuing wrong doctrine applies, "the statute of limitations does not begin to run until the violative act ceases." *Id.* "To determine whether the doctrine applies, the court must consider the particular policies of the statute of limitations in question, as well as the nature of the wrongful conduct and harm alleged." *Id.* (citations omitted).

from accessing information. Derivative litigation should not be the forum for claims that are, in essence, really domestic disputes. However, the court is bound to apply the liberal standards of Rule 12(b)(6). Doing so, it allows the allegations of this particular Amended Complaint to survive, but without prejudice to a more searching review upon subsequent motion practice as to whether the claims are time-barred and whether there is any evidentiary basis for a constructive fraud.

## VI. CONCLUSION

{38}    For the foregoing reasons:

(1) Defendant's Motion is GRANTED as to Ms. Maurer's individual claims against Mr. Maurer for breach of fiduciary duty and constructive fraud and those claims are hereby DISMISSED;

(2) Defendant's Motion is DENIED as to the derivative claims against Mr. Maurer for breach of fiduciary duty and constructive fraud.

IT IS SO ORDERED, this the 23rd day of August, 2013.