Grasinger v. Williams, 2015 NCBC 5.

| | |
|---|---|
| STATE OF NORTH CAROLINA | IN THE GENERAL COURT OF JUSTICE |
| | SUPERIOR COURT DIVISION |
| COUNTY OF WAKE | 13 CVS 13297 |

JOHN L. GRASINGER and LAWRENCE          )
BENUCK,                                 )
              Plaintiffs                 )
                                )
                                )        **OPINION AND ORDER**
           v.                      )      **ON MOTION TO DISMISS**
                                  )
JASON A WILLIAMS and CAMERON             )
L. PERKINS,                             )
              Defendants                 )

THIS CAUSE, designated a mandatory complex business case by Order of the Chief Justice of the North Carolina Supreme Court, pursuant to N.C. Gen. Stat. § 7A-45.4(b) (hereinafter, references to the North Carolina General Statutes will be to "G.S."), and assigned to the undersigned Special Superior Court Judge for Complex Business Cases, comes before the court upon Defendants' Motion to Dismiss ("Motion") pursuant to Rules 12(b)(1) and 12(b)(6) of the North Carolina Rules of Civil Procedure ("Rule(s)"); and

THE COURT, after reviewing the Motion, briefs in support of and in opposition to the Motion, arguments of counsel and other appropriate matters of record, CONCLUDES that the Motion should be GRANTED, in part, and DENIED, in part, for the reasons stated herein.

> *Jordan Price Wall Gray Jones & Carlton, PLLC, by Paul T. Flick, Esq. and Lori P. Jones, Esq. for Plaintiffs John L. Grasinger and Lawrence Benuck.*

> *Wyrick Robbins Yates & Ponton LLP, by Charles George, Esq. and Kevin J. Stanfield, Esq. for Defendants Jason A. Williams and Cameron L. Perkins.*

McGuire, Judge.

## PROCEDURAL HISTORY

1. On October 2, 2013, Plaintiffs John L. Grasinger ("Grasinger") and Lawrence Benuck ("Benuck") filed a Verified Complaint against Defendants Jason A. Williams

("Williams") and Cameron L. Perkins ("Perkins"). Plaintiffs' action was designated as No. 13 CVS 13297 by the Clerk of Superior Court of Wake County.

2.      On November 6, 2013, Plaintiffs filed their First Amended Verified Complaint ("Amended Complaint"). In the Amended Complaint, Plaintiffs pursue the following seven claims for relief ("Claim(s)"): First Claim for Relief (Breach of Fiduciary Duty); Second Claim for Relief (Breach of Contract); Third Claim for Relief (Constructive Fraud, Constructive Trust and Accounting); Fourth Claim for Relief (Civil Conspiracy); Fifth Claim for Relief (Unfair and Deceptive Trade Acts or Practices); Sixth Claim for Relief (Conversion); Seventh (Alternative) Claim for Relief (Unjust Enrichment).

3.      On December 9, 2013, Defendants filed the Motion, seeking dismissal of all Claims, pursuant to Rules 12(b)(1) and 12(b)(6).

4.      The Motion has been fully briefed and argued, and is ripe for determination.

FACTUAL BACKGROUND

Among other things, the Amended Complaint alleges that:

5.      Plaintiffs sought to open an urgent care clinic in Boone, North Carolina, in early 2009. After Plaintiffs had completed significant work on the clinic and negotiations with a prospective Practice Manager fell through, Plaintiffs entered into negotiations with Defendants for the formation of a partnership that would operate the Clinic. To that end, the Parties agreed to form a corporation, Boone UC, Inc. ("Boone UC"), owned in equal 25% shares by each individual party.[1]

6.      Incident to the formation of Boone UC, the individual Parties entered into a Shareholders' Agreement ("Agreement") "governing their rights and obligations with respect to Boone UC."[2]  Under the Agreement, each individual party was required to make a capital

---

[1] Am. Compl. ¶ 9-13.
[2] *Id.* ¶ 14.

contribution of $37,500. The Agreement also provided that Boone UC's "Board of Directors shall be comprised of three (3) directors" comprised of the two Defendants and Plaintiff Grasinger.[3] Each of the parties signed the Agreement.

7. The Agreement also included a "drag-along" provision whereby all shareholders would be obligated to sell their shares and vote in favor of any merger, consolidation, or asset sale that was approved by a majority of Boone UC's board of directors.[4] Defendants "represented" to Plaintiffs that "no merger, consolidation, or sale of the assets of capital stock of Boone UC had been agreed to, was being contemplated, or was in negotiation."[5] Plaintiffs have not alleged that Defendants had agreed to or even contemplated the sale of Boone UC at the time that the Agreement was executed.

8. The Boone UC clinic opened in January 2010, and was successful.[6]

9. On or about October 5, 2010, Defendants called a special meeting ("Meeting") of the Boone UC Board of Directors. At the meeting, Defendants proposed the sale of Boone UC, along with seven or eight other urgent care clinics in which Defendants had a "substantial interest," to Urgent Care of America Holdings, LLC ("UCA") ("Transaction"). Plaintiffs objected to the sale. Defendants, however, notified Plaintiffs that they would nevertheless be forced to sell their interest in Boone UC pursuant to the drag-along provision.[7]

10. UCA paid a total of approximately $22 million for all of the urgent care clinics, including Boone UC, only $165,000 of which was paid for Boone UC. Plaintiffs contend that Defendants "unilaterally and arbitrarily" assigned Boone UC a total valuation of $165,000.

---

[3] *Id.* ¶¶ 15, 17.
[4] *Id.* ¶ 16.
[5] *Id.* ¶ 18.
[6] *Id.* ¶ 20.
[7] *Id.* ¶¶ 21-25.

This valuation was less than the corporation's net equity and "substantially undervalued" Boone UC. Defendants failed to obtain an independent valuation of Boone, failed to follow generally accepted accounting practices, undervalued "components" of Boone UC, and "manipulated" the value of Boone UC.[8]

11.    Plaintiffs and Defendants each received $41,250 in payment for their shares of Boone UC, a 10% return on their original investments.[9]

12.    Defendants used their positions as the majority of the Board of Directors and the drag-along rights in the Agreement to manipulate the amount paid for Boone UC as part of the Transaction and to unfairly benefit their own personal interests.[10]  As a result of Defendants' actions, "Plaintiffs got less than they deserved from Boone UC's portion of the net sales proceeds for the [ ] Transaction."[11]

13.    In connection with the Transaction, "the Defendants, without proper authority, created, filed, or caused to be created or filed, certain documents on behalf of Boone UC and the Plaintiffs, including . . . documents indicating full shareholder consent [to the sale] and Articles of Dissolution" without Plaintiffs' approval or consent.[12]

14.    Defendants' actions breached their fiduciary duties to Plaintiffs as shareholders, directors and officers, as well as duties imposed by statute under G.S. Chapter 55.[13]

---

[8] *Id.* ¶¶ 28-32, 34.
[9] *Id.* ¶29 and Exh. D.
[10] Am. Compl. ¶¶ 43-46.
[11] *Id.* ¶45.
[12] *Id.* ¶¶ 36-37.
[13] *Id.* ¶¶ 38-40.

## DISCUSSION

15. The Motion seeks dismissal of Plaintiff's Claims pursuant to Rules 12(b)(1) for lack of subject matter jurisdiction and 12(b)(6) for failure to state claims upon which relief can be granted. The Court will address each in turn.

### a. Rule 12(b)(1)

16. Rule 12(b)(1) allows a party to move to dismiss an action at any stage for lack of subject matter jurisdiction. "Whenever it appears by suggestion of the parties or otherwise that the court lacks jurisdiction of the subject matter, the court shall dismiss the action." Rule 12(h)(3). Unlike a motion to dismiss for failure to state a claim, a court considering dismissal for lack of subject matter jurisdiction may weigh matters outside of the pleadings. *Tart v. Walker*, 38 N.C. App. 500, 502 (1978). In opposing a motion to dismiss under Rule 12(b)(1), the Plaintiff bears the burden to show facts that if accepted as true would demonstrate the existence of jurisdiction. *Wilkie v. Stanley*, 2011 NCBC 11 ¶ 7 (N.C. Super. Ct. 2011); *see also Blinson v. State*, 186 N.C. App. 328, 333 (2007) (citing *Coker v. DaimlerChrysler Corp.*, 172 N.C. App. 386, 391 (2005) ("As the party invoking jurisdiction, plaintiffs have the burden of proving the elements of standing.")).

17. Plaintiffs raise seven claims for relief against Defendants. All but Plaintiffs' claim for breach of contract ("Second Claim for Relief") arise from the same allegations; that Defendants used their control of the Board of Directors and the drag-along rights in the Agreement to enter into the Transaction in which they sold Boone UC for less than its actual fair value and thereby benefitted themselves by receiving proportionately more for their interests in the other urgent care clinics sold as part of the Transaction.[14] All but Plaintiffs'

---

[14] The Court specifically notes that Plaintiffs' claim for violation of Chapter 75 arises out of an injury to the corporation and is therefore derivative in nature. *See Aubin v. Susi*, 149 N.C. App. 320, 324 (2002) (affirming dismissal of Chapter 75 claim where plaintiff "failed to show that any damage which she [ ] sustained as a result of [defendant's] actions is different from that sustained" by the

breach of contract claim seek damages based on Plaintiffs' allegation that they did not receive a "fair amount" for their shares in Boone UC.[15]

18.     Defendants contend that this action should be dismissed in its entirety because Plaintiffs lack standing to bring the claims in their individual capacities because the losses asserted in the Amended Complaint are losses sustained solely in their capacities as shareholders, and, therefore, must be brought derivatively pursuant to G.S. 55-7-40 *et seq.* Plaintiffs argue that because Defendants controlled the corporation, they were "de facto minority shareholders" who should be permitted to pursue the claims in their individual capacities.[16]

19.     It is a well-established rule in North Carolina that corporate shareholders cannot bring actions in their individual capacities to enforce causes of action accruing to the corporation. *Barger v. McCoy Hillard & Parks,* 346 N.C. 650, 658 (1997); *Fulton v. Talbert,* 255 N.C. 183, 185 (1961). This principle has become known as the *Barger* rule. There are, however, two exceptions to the *Barger* rule:

> [A] shareholder may maintain an individual action against a third party for an injury that directly affects the shareholder, even if the corporation also has a cause of action arising from the same wrong, if the shareholder can show that the wrongdoer owed him a special duty or that the injury suffered by the shareholder is separate and distinct from the injury sustained by the other shareholders or the corporation itself.

---

corporation). However, to the extent Plaintiffs Chapter 75 claim is based on any individual harm, Plaintiffs have failed to allege any act that is in or affecting commerce as required by G.S. § 75-1.1, and therefore that claim would be subject to dismissal under Rule 12(b)(6). *See White v. Thompson,* 364 N.C. 47, 52 (2010) (recognizing that internal operations and management of a business are not within the scope of G.S. § 75-1.1).

[15] Pls.' Mem. In Opposition at 4 -5.

[16] Plaintiffs' argument that they could not have brought their claims as derivative actions because Defendants had dissolved Boone UC is without merit since North Carolina law expressly permits a civil action to be filed on behalf of a dissolved corporation. G.S. §55-14-05(b)(5).

*Regions Bank v. Reg'l Prop. Dev. Corp.*, 2008 NCBC 8, ¶ 45 (N.C. Super. Ct. Apr. 21, 2008) (quoting *Barger*, 346 N.C. at 658-59). As discussed below, the Complaint does not allege facts sufficient to meet either of the *Barger* exceptions.

*Special Duty*

20.     The first prong of the *Barger* rule applies when "the shareholder can show that the wrongdoer owed him a special duty." *Barger*, 346 N.C. at 659. To proceed under this theory, a plaintiff's allegations must establish that the Defendants owed a duty that was "personal to [P]laintiffs as shareholders and was separate and distinct from the duty [D]efendants owed the corporation." *Id.*

21.     Plaintiffs allege that Defendants owed them a special duty because Defendants exercised complete control over Boone UC by holding two of the three seats on the board of directors and because of the drag-along provision. Plaintiffs argue that they were essentially minority shareholders in Boone UC and were owed a special duty by Defendants as *de facto* majority shareholders.[17]

22.     In North Carolina, majority shareholders of a closely held corporation owe a "'special duty' and obligation of good faith" to minority shareholders. *Norman v. Nash Johnson & Sons' Farms, Inc.*, 140 N.C. App. 390, 407 (2000) (quotations in original). This duty arises from the concern that minority shareholders have "'neither the power to dissolve the business unit at will . . . nor do[ they] have . . . the opportunity to sell his shares on the open market.'" *Id.*, 140 N.C. App. at 404.

23.     However, in the context of the *Barger* rule, North Carolina courts have rejected the notion that fifty-fifty shareholders in a closely held corporation necessarily owe one another such a special duty. *See Aubin v. Susi*, 149 N.C. App. 320, 325-26 (2002) (finding that

---

[17] Compl. ¶ 44; Pls.' Mem. Opp'n at 6-8 ("by virtue of the Drag-Along Rights provision and appointment of the majority of seats on the Board, Plaintiffs are essentially minority shareholders".)

plaintiff failed to show a special duty as in *Norman* simply by showing that plaintiff and defendant were each fifty percent shareholders in a closely held corporation); *accord Outen v. Mical*, 118 N.C. App. 263 (1995). Moreover, this Court has recently held that the presence of control by one fifty percent shareholder, even "sole effective control," does not justify imposing such a duty on the controlling fifty percent shareholder. *Maurer v. Maurer*, 2013 NCBC 44 ¶¶ 17, 28 (N.C. Super. Ct. Aug. 23, 2013). In *Maurer*, the Court noted that, as a fifty percent shareholder, the plaintiff was not "in the same precarious position" as a true minority shareholder because the plaintiff had the ability to "automatically create a deadlock on any matter requiring a shareholder vote." *Id.* at ¶ 26. Given this, the Court declined to find the special duty prong of *Barger* satisfied.

24.     As in *Maurer*, the Court finds that the Defendants' exercise of operational control is insufficient to warrant treating Plaintiffs as de facto minority shareholders. As in that case, Plaintiffs here, as fifty percent shareholders, had a greater ability to limit the control of other shareholders, for example by creating deadlock on matters requiring shareholder approval, than would true minority owners. Indeed, Plaintiffs as fifty-percent shareholders agreed to the composition of the board of directors and the drag-along rights of which they now complain.  Accordingly, the Court finds that Defendants' control of the board of directors and the drag-along provision in the Agreement do not give rise to any special duty owed to Plaintiffs.  As a result, Plaintiffs have failed to satisfy the first prong of *Barger*.

*Separate and Distinct Injury*

25.     Plaintiffs may, however, proceed in their individual action if they allege an injury "suffered by the shareholder that is separate and distinct from the injury sustained by the other shareholders or the corporation itself." *Barger*, 346 N.C. at 659. To satisfy this prong of *Barger*, Plaintiffs contend that the arbitrary valuation of Boone UC uniquely harmed

Plaintiffs because Defendants were able "to increase their own personal take from [the Transaction], caus[ing] specific damage to Plaintiffs that was not suffered by Defendants."[18]

26.   At the heart of Plaintiffs' Amended Complaint is that Defendants arbitrarily assigned a value to Boone UC in the Transaction that was lower than Plaintiffs contend Boone UC was worth. Based on Defendants' alleged conduct, Boone UC, and each share thereof, was worth substantially less than Plaintiffs contend it should have been worth. Plaintiffs' ultimate injury, receiving less than they believed their shares were worth, was incurred solely on account of their status as shareholders and is attributable solely to the manipulation of the stock value of Boone UC. Decreased share value, however, is precisely the type of injury North Carolina courts have held to be insufficient to satisfy the second prong of *Barger* because the same injury is suffered by all shareholders. *See, e.g., Allen v. Ferrera*, 141 N.C. App. 284, 290 (2000).

27.   Plaintiffs maintain, however, that their injury is distinct because Defendants did not suffer any harm on account of the undervaluation of Boone UC as this undervaluation secured more proceeds for the other clinics owned by Defendants that were involved in the Transaction. The Court disagrees. While it may be true on some level that Defendants benefitted from the allocation of the proceeds paid for the purchase of Boone UC as part of the Transaction, the injury suffered by Plaintiffs because of this allocation is an injury to Boone UC itself, and is the same injury suffered by Defendants as shareholders. Plaintiffs do not contend that only their interests in Boone UC were devalued, but instead admit that all four shareholders received the same amount for their equal interests. The devaluation of Boone UC, therefore, resulted in the devaluation of the Defendants' interest in that company

---

[18] Pls.' Mem. Opp'n. at 9.

as well. As such, the Court is not persuaded that the injury suffered by Plaintiffs was separate and distinct from that suffered by Boone UC and the Defendants.

28. Plaintiffs have failed to allege facts sufficient to establish that they have standing to bring their claims (except for breach of contract) individually. These claims are derivative claims belonging to Boone UC. Plaintiffs are not minority shareholders. In addition, Plaintiffs have not alleged facts that establish a special duty owed to them by Defendants, or any damages separate and distinct from the damages suffered by all shareholders of Boone UC. Accordingly, Plaintiffs lack standing to bring individual shareholder claims and Defendants' motion to dismiss pursuant to Rule 12(b)(1) should be GRANTED with regard to Claims One, Three, Four, Five, Six, and Seven.

29. Plaintiffs' claim for breach of contract (Second Claim for Relief) alleges that Defendants breached the Agreement by failing to provide notice required by the drag-along provisions in the Agreement. The provision requires that shareholders be provided a notice "containing a description of the material terms of such proposed transaction."[19] The Court finds that that the breach of contract claim is not a derivative claim, but rather one that can be raised by an individual shareholder. *See, e.g., Snyder v. Freeman*, 300 N.C. 204 (1980) (allowing individual claim for breach of agreement among shareholders). Accordingly, Defendants' motion to dismiss pursuant to Rule 12(b)(1) should be DENIED with regard to Claim for Relief Two.

## b. Rule 12(b)(6).

30. Defendants do not seek dismissal of Plaintiffs' claim for breach of contract (Second Claim for Relief) pursuant to Rule 12(b)(6).[20] Additionally, because the Court finds that it lacks subject matter jurisdiction over Claims for Relief One, Three, Four, Five, Six

---

[19] Compl. ¶61.
[20] Defs.' Brief in Support of Motion to Dismiss at 11-16.

and Seven, it need not address Defendant's contentions regarding their Motion to Dismiss pursuant to Rule 12(b)(6) regarding these Claims.

NOW THEREFORE, based upon the foregoing, it is hereby ORDERED that:

1.  The Motion is GRANTED, in part, as to Claims for Relief One, Three, Four, Five, Six, and Seven, and those claims are hereby DISMISSED without prejudice.

2.  To the extent the Motion seeks dismissal of Plaintiffs' Second Claim for Relief for breach of the Agreement, the Motion is DENIED.

This the 15th day of January, 2015.